UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMES E. WHITE,                    )
                                   )  No. CV-06-010-CI
          Plaintiff,               )
                                   )
v.                                 )  ORDER GRANTING DEFENDANT'S
                                   )  MOTION FOR SUMMARY
JO ANNE B. BARNHART,               )  JUDGMENT AND DENYING
Commissioner of Social             )  PLAINTIFF'S MOTION FOR
Security,                          )  SUMMARY JUDGMENT
                                   )
          Defendant.               )
                                   )

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 15), noted for hearing without oral argument on July 24, 2006.  Attorney Maureen J. Rosette represents Plaintiff; Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney Johanna Vanderlee represent Defendant. The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's for Summary Judgment (Ct. Rec. 12).

**JURISDICTION**

On March 17, 2003, James E. White (Plaintiff) filed an application supplemental security income benefits, alleging disability due to a closed head injury, depression, a learning disability and left arm paralysis, with an onset date of October 26,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1   1988.   (Tr. 57.)   The claim was denied initially and on

2   reconsideration; a request for hearing was ultimately filed.   After

3   a hearing on March 24, 2005, Administrative Law Judge (ALJ) Paul

4   Gaughen denied benefits on April 27, 2005; the Appeals Council

5   denied Plaintiff's request for review.   The instant matter is before

6   this court pursuant to 42 U.S.C. § 405(g).

7                            **STANDARD OF REVIEW**

8       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

9   court set out the standard of review:

10          A district court's order upholding the Commissioner's
         denial of benefits is reviewed *de novo*.  *Harman v. Apfel*,
11       211 F.3d 1172, 1174 (9th Cir. 2000).   The decision of the
         Commissioner may be reversed only if it is not supported
12       by substantial evidence or if it is based on legal error.
         *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
13       Substantial evidence is defined as being more than a mere
         scintilla, but less than a preponderance.   *Id.* at 1098.
14       Put another way, substantial evidence is such relevant
         evidence as a reasonable mind might accept as adequate to
15       support a conclusion.   *Richardson v. Perales*, 402 U.S.
         389, 401 (1971).   If the evidence is susceptible to more
16       than one rational interpretation, the court may not
         substitute its judgment for that of the Commissioner.
17       *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
         Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

18
            The ALJ is responsible for determining credibility,
19       resolving conflicts in medical testimony, and resolving
         ambiguities.   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
20       Cir. 1995).   The ALJ's determinations of law are reviewed
         *de novo*, although deference is owed to a reasonable
21       construction of the applicable statutes.   *McNatt v. Apfel*,
         201 F.3d 1084, 1087 (9th Cir. 2000).

22

23                           **SEQUENTIAL PROCESS**

24      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

25   requirements necessary to establish disability:

26          Under the Social Security Act, individuals who are
         "under a disability" are eligible to receive benefits.   42
27       U.S.C. § 423(a)(1)(D).   A "disability" is defined as "any
         medically determinable physical or mental impairment"
28       which prevents one from engaging "in any substantial

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

### STATEMENT OF THE CASE

The facts have been presented in the administrative transcript and the ALJ's decision, and will be summarized briefly here. At the time of the hearing, Plaintiff was 33 years old, with a ninth grade education and no past relevant work experience. Plaintiff was divorced with four children who did not live with him. (Tr. 206-07.) At the time of the hearing, he had not obtained his GED, although he had attempted several times. (Tr. 105, 207.) Plaintiff was in a motorcycle accident when he was 17 years old, and suffered injuries to his neck, spinal cord nerves, left arm and right wrist. As a result of the accident, he lost the use of his left arm, which has no feeling from the elbow down. (Tr. 209-10.) He testified that he lived independently in a trailer. He was able to cook, clean,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

walk his dog, watch television, play computer games, vacuum and sweep. He had a few friends and visited his mother and sister. (Tr. 216-17.) He had a driver's license and was able to drive a car with automatic transmission and power steering. (Tr. 215.) He reported trouble sleeping due to nerve pain in his left arm. (Tr. 214.) He testified he had no trouble sitting for extended time. (Tr. 212.) At the time of the hearing, he was not taking prescription medications. (Tr. 217.) Based on the ALJ's hypothetical question, vocational expert (VE) Thomas Moreland testified that Plaintiff was capable of performing work as a surveillance monitor in the gaming/gambling industry and as a customer service representative/ call-out operator. (Tr. 224-25.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Gaughen determined Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 24.) At step two and three, the ALJ concluded Plaintiff had severe impairments of cognitive disorder with associated depression and avoidant traits; mathematic disorder; and severe physical or neurological disorder (post motor vehicle accident) resulting in total paralysis of the left upper extremity, impairments that, alone or in combination, did not meet or equal the listed impairments in Appendix I, Subpart P, Regulation No. 4. (Tr. 24.) The ALJ found Plaintiff's allegations regarding his limitations were not fully credible. (Tr. 21-22.)

At step four, the ALJ found Plaintiff had no past relevant work. He determined Plaintiff had the residual functional capacity (RFC) to perform a significant range of sedentary to light work, to occasionally lift/carry 10 pounds maximum; stand or walk for about

30 minutes at a time for a maximum total of four hours in an eight-hour work day, with no limitations on sitting (with normal breaks), for a total of about eight hours in an eight hour work day; no pushing and/or pulling with the left upper extremity; no crawling, climbing ropes, ladders or scaffolds; and no work at unprotected heights.  The ALJ found that due to a cognitive disorder, not otherwise specified, Plaintiff had only mild limits in concentration and pace.  (Tr. 24.)  At step five, based in part on the vocational expert's testimony, the ALJ found Plaintiff was capable of performing a significant number of jobs in the national economy such as surveillance system monitor and call out operator  (Tr. 24-25.)

**ISSUES**

The question presented is whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether the decision was based on proper legal standards.  Plaintiff asserts Defendant did not meet her burden at step five.  (Ct. Rec. 13 at 12.)  Plaintiff argues that the ALJ's step five finding was not based on substantial evidence because (1) the VE's conclusion did not take into account Plaintiff's limited education; and (2) Plaintiff's limitations preclude his ability to work at the jobs identified by the VE.  (Id. at 9.)

**ANALYSIS**

In social security proceedings, the claimant has the burden of proving he is disabled.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  At step five in the sequential evaluation, the burden "shifts to the Secretary to identify specific jobs existing in the national economy that claimant can perform despite identified limitations."  *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1995).  Where a claimant's RFC includes non-exertional limitations,
evidence from a VE is required in assessing the claimant's ability
to work at jobs in the national economy.  *Light v. Social Sec.
Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).  The hypothetical posed
by the ALJ to elicit VE testimony must include all of claimant's
physical and mental functional limitations supported by the record.
*Id.*

**A.    Hypothetical Question**

It is undisputed that Plaintiff has some cognitive limitations
stemming in part from his motorcycle accident in 1988. (Ct. Rec. 13
at 9; Tr. 20-21.)  Allan Bostwick, Ph.D., examined Plaintiff three
times between October and December 2002, administering an extensive
series of objective psychological testing.   (Tr. 95-96, 104.)[1]
During the evaluations, Plaintiff reported he was able to perform
his activities of daily living, including cooking, laundry,
shopping, cleaning and housekeeping.  He drove a car, played video
games and managed his own money.  (Tr. 98, 108-111.)  When living
with his mother, he helped her around the house, and enjoyed
watching television and movies, and visiting with his girlfriend and

---

[1]   Objective tests administered were: Wechsler Adult
Intelligence Scale-III; Wide Range Achievement Test-3; Monroe
Sherman Speed Reading Test, Mental Control Tasks; Rey Auditory
Verbal Learning Test; Rey Complex Figure Test; Cowboy Story-Visual
Presentation; Portland and Babcock Story Recall Tests, Draw-A-Clock
Test; Grip Strength Test; Trails A and B; Lateral Dominance
Examination; Rey 15-Item Memorization Test.   Some tests were
administered more than one time.  (Tr. 96, 105.)

friends. (Tr. 106-07.)   Plaintiff could read the psychological questions and respond to standard instructions.  (Tr. 99.)  His higher level attentional capacities tested average to mildly impaired.  (Tr. 108.)  Dr. Bostwick concluded from test results that Plaintiff had a limited formal education, and would do best "working relatively independently" or in small groups, "without the need to interact closely with others in completing job tasks."  (Tr. 112.) Dr. Bostwick noted Plaintiff was a very concrete thinker and had difficulty with "more abstract reasoning and mental flexibility." (Id.)   Dr. Bostwick also opined Plaintiff had a good ability to learn and retain information through visual demonstration, and did not have significant impairment in attention or concentration. (Id.)   He opined Plaintiff was able to comprehend instructions through both verbal and written formats, stating: "He exhibits a good ability to learn and retain complex information and there is no evidence he will require any significant, excessive repetition and over-learning trials in retraining and job skill acquisition.  He will be able to comprehend instruction through both verbal and written formats."  (Tr. 103.)

At the hearing, Scott Mabee, Ph.D., testified after reviewing the record that Plaintiff had non-severe mental impairments. Referencing Dr. Bostwick's neuropsychological examination (Tr. 110), he concluded Plaintiff had a mild cognitive disorder, with reading skills in the twelfth percentile, spelling skills in the fourth percentile and math skills in the first percentile.  Dr. Mabee opined that test results in these areas did not support a learning disability diagnosis.  (Tr. 201, 204.) He also diagnosed mild depressive disorder and mild adjustment disorder, that can interfere

1   with functioning at a mild level.  (Tr. 203.)

2       The ALJ presented the following hypothetical individual to VE

3   Moreland, who was present during hearing testimony:

> The worker under consideration is a young gentleman, early
> 30's with a 9th-grade education, limited as we've heard
> from the Claimant, no equivalency.  The worker has no past
> relevant work for your consideration.  Please consider
> here that the worker can do a range of light to sedentary
> exertion. . . .
>
> . . .  This right-handed individual has essentially no
> functional use of the left upper extremity.  This goes
> from the perspective of dysfunction in grasping and
> reaching and extending, and also, he can't pick up sensory
> impressions on the left.  As one consequence, no work at
> unprotected heights, no crawling ramps or ladders for
> obvious reasons.  The individual can occasionally lift or
> carry with the right upper extremity no more than about 10
> pounds.  His sitting is not restricted.  Being on the feet
> standing or walking would be for approximately one half-
> hour at a time.  And please assume that he could not be on
> his feet standing or walking for most of a work day, but
> he could perhaps approach about half of same.  And due to
> impairment especially from an old injury, he has some mild
> only problems in maintaining his concentration,
> persistence and pace on work like activities.  These are
> relatively insignificant and would not impair him from
> paying essential attention especially to simple
> instructions and procedures.

(Tr. 222-224.)

19      At the hearing, Plaintiff testified that he was able to read a

20  newspaper and that he had passed all of the exams for his GED except

21  for math, due of problems with multiplication.  He stated he could

22  write with his right hand for one half hour at a stretch, but his

23  spelling was "terrible."  (Tr. 207-08, 215-16.)  This testimony is

24  consistent with Dr. Bostwick's conclusions after extensive objective

25  testing, and with the testimony of Dr. Mabee.  The VE was present

26  during this testimony, which was incorporated into the VE

27  hypothetical by the ALJ.  (Tr. 224.)  The ALJ's hypothetical

28  question included all Plaintiff's limitations supported by the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

1    record.

2    **B.    VE Testimony**

3         The VE testified that the hypothetical individual was able to

4    perform work as a surveillance services monitor in the

5    gaming/gambling industry and as a customer service/call out

6    operator. (Tr. 224-25.)  Plaintiff argues that "even though the ALJ

7    stated Mr. White had a limited education, the vocational expert's

8    response appeared as though Mr. White's limited education were

9    omitted or not adequately considered by the vocational expert."

10   (Ct. Rec. 13 at 9.)   This argument is without merit.  The hearing

11   transcript shows that Plaintiff's counsel specifically asked the VE

12   if Plaintiff's reading, writing and math limitations would affect

13   Plaintiff's ability to perform the identified jobs. (Tr. 226.)  The

14   VE responded that the jobs did not have a math requirement, the

15   reading would be simple and there was no writing, *i.e.*, "a matter of

16   checking boxes and entering data." (Id.)   As discussed above,

17   Plaintiff testified he was able to read a newspaper, and write

18   simple letters with spelling errors.  He stated he got "pretty good

19   scores" on his GED, with the exception of math. (Tr. 207.)  He also

20   reported playing video games as a daily activity. (Tr. 106.)  The

21   ALJ's hypothetical contained educational limitations supported by

22   the record, and the record shows that these were considered directly

23   by the VE in his testimony.

24        Plaintiff further argues that the *Dictionary of Occupational*

25   *Title* (*DOT*) definitions of "surveillance service monitor" and "call-

26   out operator" do not comport with the VE's testimony regarding the

27   job requirements; therefore, the VE's testimony is not substantial

28   evidence.  Referencing post-hearing evidence in support of his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

argument, Plaintiff contends he does not have the skills to do these jobs.[2]  (Ct. Rec. 13 at 11-12.)

_____

[2] Evidence submitted after the ALJ decision and considered by the Appeals Council is part of the record for review. *Harman*, 211 F.3d at 1179-80 (district court properly considered new evidence that was submitted to the Appeals Council because the Appeals Council addressed those materials in the context of denying review); *Ramirez v. Shalala* 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting the district court reviewed all materials, including new evidence not before the ALJ, after the Appeals Council declined to accept review in light of the entire record).

Here, the new evidence submitted to the Appeals Counsel is a five-page letter from vocational consultant, Thomas Wren, M. Ed., ABVE, dated September 27, 2005, seven months after the ALJ's decision.  Attached to the letter is a labor market survey dated 1994, and a 1984 occupational brief describing the job of "telephone operator."  (Tr. 168-72.)  Dr. Wren, who based his opinion that Plaintiff could not perform the identified jobs on a review of the ALJ's opinion (Tr. 168), did not have the benefit of reviewing the entire record, including Dr. Bostwick's comprehensive report, or hearing the testimony of Plaintiff and Dr. Mabee.  Further, the report and recommendation from the U.S. District Court of Maine is not considered persuasive authority.  (Tr. 181.)  The court has considered the new evidence submitted.  "New evidence" obtained by a claimant after an adverse administrative decision is less persuasive.  *See e.g., Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).  The post-hearing report solicited by Plaintiff does not

Although *DOT* raises a rebuttable presumption as to job requirements, where VE testimony addresses the impact of a claimant's limitations on his ability to find and perform a specific job, and the record includes persuasive evidence supporting the VE's opinion that a claimant is able to perform the work, the presumption may be rebutted. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001); *Johnson*, 60 F.3d at 1435 (*DOT* is not "invariably controlling" where VE specifically addresses requirements of job and limitations of claimant); *see also Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). Here, Plaintiff's counsel specifically cross-examined the VE about Plaintiff's reading, writing and math abilities.  The VE responded that the jobs identified required simple reading during the training period (with one supervisor) and essentially no math or writing. The job entailed checking boxes and entering data.  (Tr. 226.)  Further, the VE specifically identified a surveillance monitor job in "the gaming and gambling industry" where the individual would be "simply observing monitors."  (Tr. 224.)

Plaintiff, in the VE's presence, testified he did "pretty good" on his GED exams with the exception of math, could read a newspaper and write a letter.  He reported playing video games and using the computer as part of daily activities.  Dr. Bostwick's reports indicated that Plaintiff had mild cognitive limits, was concrete in

constitute substantial evidence sufficient to reject the VE's opinion resulting from cross-examination by Plaintiff's counsel and the ALJ's finding that Plaintiff was capable of performing these jobs.  *See e.g. Macri v. Chater*, 93 F. 3d 540, 544 (9th Cir. 1996); *Gomez v. Chater,* 74 F.3d 967, 972 (1996).

his thought processes with relative good learning and demonstrated good ability to "learn and retain information presented through visual demonstration and with the opportunity to repeat the activities." (Tr. 112.)   This evidence supports the VE's testimony that Plaintiff could perform the identified jobs.

The ALJ's hypothetical also included a limitation of "no functional use of the left upper extremity." (Tr. 223.)   The VE testified that the surveillance system monitor or call out operator jobs were sedentary level and neither was precluded by Plaintiff's left arm limitation.   (Tr. 224.)   As discussed above, Plaintiff represented that he could drive, do household chores, play video games, cook and live independently with this limitation. Plaintiff's assertion that the call-out operator requires physical exertion (occasional reaching, fingering and handling) [3] that he cannot perform is without support in the record.  (Ct. Rec. 13 at 11.)  Furthermore, examining physician Terrence Rempel, M.D., opined that Plaintiff could do computer and keyboard work, (increased efficiency with a one handed keyboard), but should not use his right arm for "repetitive grasping, power grasping and handling." (Tr. 89.)   This opinion is uncontradicted in the medical records.[4]

The evidence of record, Plaintiff's testimony and the VE

---

[3] Reaching, handling and fingering exists up to one-third of the time for the job of call-out operator.  *DOT*, 237.367-014,(4th ed. 1991).

[4] RFC assessments prepared by agency physicians indicate no manipulative restrictions for Plaintiff's right arm.  (Tr. 125, 148.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

1    opinions that Plaintiff could perform the identified work

2    sufficiently rebut any deviations from the *DOT* definition.   The ALJ

3    did not err in relying on the VE testimony.

**CONCLUSION**

5        The Commissioner met her burden at step five to prove

6    Plaintiff can perform other work in the national economy.

7    Accordingly,

8        **IT IS ORDERED**:

9        1.   Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is

10   **GRANTED**.

11       2.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is

12   **DENIED.**

13       3.   The District Court Executive is directed to file this

14   Order and provide a copy to counsel for Plaintiff and Defendant.

15       4.   Judgment shall be entered for Defendant and the file

16   **CLOSED.**

17       DATED October 18, 2006.

18

19                    _____S/ CYNTHIA IMBROGNO_____
                      UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13